MILES V. ROOD *v.* MIRZA CHAPIN & MERRICK S. CHAPIN.

Where a party sold land for which other land was given in part payment, and was deceived in regard to the latter, the bargain was set aside and a reconveyance decreed.

Where a party purchases land in possession of a third person, with a knowledge of that fact, he takes it subject to all equities existing between his vendor and the person in possession.

THE bill in this case was filed to set aside a conveyance of real estate, for fraud.    It states, that the complainant, on the 28th of August, 1840, conveyed to Mirza Chapin, one of the defendants, forty acres of land situate in Genesee county, in consideration of a yoke of oxen, a cow, and forty acres of land situate in Wayne county.    That complainant was induced to make the trade by the false and fraudulent representations of the defendant, who stated the land in Wayne county to be as good as any in the state, with openings of hazel brush upon a part of it, and in part covered with walnut, and white and black oak timber; that it was high land, free from marsh or swamp, and lay upon the corner of two roads that crossed each other, and was within a mile of a canal;—all of which representations were untrue.    That complainant, not having seen the land at the time of the trade, relied on the aforesaid representations of defendant, and that he afterwards, on discovering the fraud and imposition, on October 21st, 1840, notified defendant in writing that he did not consider the trade binding, and offered to rescind it, and to restore the oxen and cow, and reconvey the lot in Wayne county to the defendant; and demanded a reconveyance from him of the land in Genesee county, which

the defendant refused to give. That defendant, on the next day, (October 22d, 1840,) conveyed the lot in Genesee county to his brother Merrick S. Chapin, the other defendant, who, on the next day thereafter, served a written notice on complainant to quit the premises. The bill charged the conveyance from Mirza to Merrick was made without consideration, and to defraud the complainant.

Mirza Chapin, by his answer, admitted the trade, but denied that he held out any improper or false inducements to complainant, or misrepresented the land, as charged in the bill. The answer further states that defendant, before the exchange took place, informed complainant that he had then but recently purchased the lot of one George Brickford, who informed him it lay near the lands of Mr. Kellogg, of Brownstown, in Wayne county; that it lay on the corners by Kellogg's, and was good land, and had little or no marsh on it. That, if it was the land defendant supposed it to be from the aforesaid description, he had seen it, and it was good land; but, as it was some years since he had been near where it was described to be, he could not tell whether the roads were laid out or not; that he gave the complainant a description of the country, and of the timber growing there at the time of defendant's residence in that county, and stated that, if the land was where it was described to be, the timber was oak, and that there was probably some walnut; and that he did not make any statements on his own positive knowledge of the value and situation of the land, but solely on the information he had received from Brickford, and that he did not make such statements, or any of them, with a view to mislead the complainant, or impose on him, but to give him all the information on the subject defendant had himself received; and he advised complainant to go and examine the lot for himself, and offered to go and show it to

him.   He admitted he had been informed the lot did not lie on the roads where he supposed it did from Brickford's description; and that complainant had given him notice he did not consider the trade binding, and had offered to reconvey and return the property as stated in the bill.   He also admitted that on the next day after he received the notice, he conveyed the lot lying in Genesee county to his brother Merrick S. Chapin, but denied that such conveyance was made to defraud complainant, or without a good and valuable consideration.

Merrick S. Chapin, by his answer, denied all knowledge of the nature of the transaction between his brother and complainant, and all information on the subject, until after he had purchased and paid for the land.   Admits the purchase on October 22d, 1840, and that, on the next day, he gave the complainant notice to quit the premises; but denies that the conveyance to him was made to defraud the complainant, or to assist his brother in defrauding him, or that it was made without a good and valuable consideration.

It is unnecessary to state the testimony, as the material parts of it are to be found in the opinion of the Court.

*J. P. Richardson*, for complainant.

*Hunt & Watson*, for defendants.

THE CHANCELLOR.   There can be no doubt that Mirza Chapin fraudulently misrepresented the lot in Wayne county, at the time of the trade, and his answer is but a lame attempt to plaster over and conceal the fraud.   He says the representations made by him were stated, at the time, to be on the information of Brickford, of whom he had a short time before purchased the land, and that he advised complainant to go and see the land, before the

trade took place, and prepared to go and show it to him. If any such advice was given, or offer made, I have no doubt it was done with a view to throw complainant off his guard, and induce him to place greater reliance on the fraudulent representations of the defendant. The testimony shows that defendant's representations were of an entirely different character from what he states them to have been.

Ziba Goff, who was called on to draw the writings, says, he understood Rood had never seen the land in Brownstown. Chapin said the land was something like that they were on, which was hazel brush land, and what would be called rather hard, but middling good wheat land. Chapin said he would pay ten dollars an acre for every acre of marsh on it, and that it was as good land as that they stood on, which was the land Rood sold to Chapin, the principal part of which was good tillable land. He thinks Chapin said it was on four corners, and that there was oak, and some black walnut on it. He called it oak openings.

George Goff testifies that Chapin said it was a good lot of land, located upon a turnpike on one side, and on the other side had a road, running the length of it, as much travelled as the Shiawassee road running to Byron. He said it was timbered with oak and black walnut, with hazel nut plains—no marsh upon it. He said it was near to the route of a canal. He told Mr. Rood he could depend upon its being such land as he represented. Witness thinks he said he had been on the sides of the land. Witness understood Mr. Rood had not been on the land or seen it, and depended on Chapin's representations of it. Is positive Chapin said he had been on two sides of it. He said the man who had owned it had been offered ten

dollars an acre for it, and it would bring that any time land would sell.

William R. Knapp states, that Rood inquired of Chapin about the timber and the quality of the land, and what was its situation, and whether there was a road near it, and Chapin said it was one of four corners of the public highway, &c. That the land was a black sandy soil, a part well timbered, and a part openings; the timber was black walnut, hickory and white oak. In reply to Mr. Rood's question, "Is there any marsh upon it?" Chapin said he had crossed two sides, and there was not any marsh upon it;—that it was as good land as that on which we stood, (which, in witness's opinion, was good land,) or as good as any land in Michigan.

From the deposition of Henry Park, United States deputy surveyor, who surveyed the lot, and made a diagram of it, which accompanies his deposition, it appears to be almost entirely marsh, and low wet land, covered with willow and alder, with some few sand ridges. Mr. Park says it is not worth over twenty-five dollars, and that, taking it as a whole, it is not susceptible of being in any way cultivated as a farm, and that no part of it affords an eligible site for building. That the dry land is of the poorest quality, and that there is no timber except a few scattering oaks. The nearest road lies from thirty to thirty-six rods from it, and has the appearance of being a road chiefly for the accommodation of the immediate settlers.

It does not appear from the testimony the representations of Mirza Chapin were based on information received from Brickford, or any one else, but the contrary; for he said he had been on two sides of the lot, that he would give ten dollars an acre for the marsh on it, that it was as good land as any in Michigan, and that the former owner

(meaning Brickford) had been offered ten dollars an acre for it. The trade must, therefore, be set aside as fraudulent, and a reconveyance of the land be decreed, unless Merrick S. Chapin, the other defendant, is entitled to the protection of the Court, as a *bona fide* purchaser without notice of the fraud.

The complainant was in possession of the premises, claiming them as his own, and insisting the trade between him and Mirza was not binding, in consequence of the fraud, when Merrick purchased of his brother, with full knowledge of complainant's possession.

On the 21st of October, complainant notified Mirza he did not consider the trade binding, and, on the next day, Mirza conveyed the land to Merrick, who, on the following day, gave notice to complainant to quit the premises. The quick succession in which these acts followed each other, is, of itself, calculated to excite suspicion in the mind. But the fact that Merrick knew, when he purchased of his brother, that the complainant was in possession of the premises, makes him a purchaser with notice of complainant's title.

A vendee who purchases real estate not at the time in the actual possession of the vendor, but of a third person, with a knowledge of that fact, takes it subject to all equities existing between the vendor and the person in possession, whether such person be in possession as tenant of the vendor, or otherwise. This is the principle to be deduced from the cases of *Taylor* v. *Stibbert*, 2 *Ves. R.* 437; *Daniel* v. *Davison*, 16 *Ves. R.* 249, and *Grimstone* v. *Carter*, 3 *Paige R.* 421.

Decree for complainant.